# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff<br>v.<br>CHARLES ALBERT RISLEY,<br>Defendant | CASE NO. 1:12-CR-0363 AWI<br><br>ORDER ON MOTION FOR COMPASSIONATE RELEASE<br><br>(Doc. No. 31) |

On July 17, 2020, Defendant Charles Albert Risley filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Defendant is currently housed at the FCI Lompoc federal prison. Based on his age, medical conditions, the conditions of confinement at FCI Lompoc, and the Covid 19 pandemic, Defendant seeks compassionate release and either a new sentence of time served or home detention for the remainder of his sentence. For the reasons that follow, Defendant's motion will be denied without prejudice.

**PROCEDURAL HISTORY**

On April 1, 2013, Defendant pled guilty pursuant to a plea agreement to a violation of 18 U.S.C. § 2252 (receipt or distribution of a visual depiction of a minor engaged in sexually explicit conduct). See Doc. Nos. 18, 19. On June 10, 2013, Defendant was sentenced to a term of 180 months imprisonment and lifetime supervised release. See doc. Nos. 25, 26. Defendant's projected release date is July 24, 2025.

On May 13, 2020, Defendant tested positive for Covid 19. Defendant did not report any severe symptoms and was released back into the inmate population on June 1, 2020.

On June 3, 2020, Defendant sent a request to the Warden of FCI Lompoc and requested compassionate release, in accordance with § 3582(c)(1)(A). The letter was received on June 4.

On June 29, 2020, the Warden of FCI Lompoc denied compassionate release.

On July 17, 2020, Defendant filed this § 3582(c)(1)(A) motion for compassionate release.

## **DEFENDANT'S MOTION**

*Defendant's Argument*

Defendant argues that he is a 61 year old male who has a history of hypertension, Type 2 diabetes, asthma, hyperlipidemia, and obesity.[1] These conditions make Defendant more susceptible to severe Covid 19 illness. Further, Defendant was already diagnosed with Covid 19 in May 2020.[2] The immune response to Covid 19 is not known, and there is a growing body of evidence that individuals who contracted and recovered from Covid 19 may be re-infected and suffer further rounds of illness. Despite not knowing where Defendant is with respect to his Covid 19 illness,[3] Defendant was placed in a dorm setting with 78 other inmates on June 1, 2020. If Defendant's condition worsens, it is unlikely that he will receive adequate medical care at FCI Lompoc. Further, records show that 857 inmates and 16 staff at Lompoc contracted Covid 19, with 2 inmates dying and all other inmates supposedly recovering. Currently, two staff are testing positive for Covid 19.[4] Lompoc is one of the worst Covid 19 hotspots in the Country. The current

---

[1] The CDC recognizes that individuals over 60 and those who are obese or have Type 2 diabetes are at an increased risk for serious infection from Covid 19. See www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html. People with hypertension and "moderate to severe asthma" "may be at increased risk" for severe infection from Covid 19. See id. Hyperlipidemia is not expressly noted on the relevant CDC website. See id.

[2] The BOP has deemed Defendant's Covid 19 to be "resolved," and Defendant admits that he did not/has not reported any serious symptoms. No evidence has been presented that indicates that Defendant is actually dealing with an active or "non-resolved" case of Covid 19.

[3] Defendant cites newspaper articles in support of this assertion. The articles are dated between February 2020 and May 2020. Some more recent articles are consistent with aspects of these articles, but also indicate that it is unknown whether a person may get Covid 19 a second time or, if that is possible, how severe the infection could be. See, e.g., hwww.bbc.com/news/health-52446965 ("BBC Article"); www.wsj.com/articles/can-you-get-covid-19-twice-11589388593 ("WSJ Article"). Both articles noted that testing related issues are generally the accepted explanation for those who were thought to have contracted Covid 19 a second time. See id. Further, one article states that the scientific consensus is that people who have had Covid 19 have some degree of immunity to it. See WSJ Article.

[4] The BOP website confirms that FCI Lompoc currently has 0 inmates and 2 staff with active Covid 19 cases. See

conditions at Lompoc do not permit Defendant to socially distance or isolate since he housed in a dorm with bunk beds that are 3.5 feet apart. 78 inmates share six sinks, five toilets, and five showers. Up to 180 inmates are only provided with 90 minutes outside the dorm, and up to 100 individuals can use computers and phones before those items are cleaned. Therefore, the combination of Defendant's medical conditions and age, the "living conditions" at Lompoc, the history of Covid 19 at Lompoc, and the presence of 2 active cases of Covid 19 by staff at FCI Lompoc demonstrate "extraordinary circumstances" that justify compassionate release.

Defendant also argues that he has exhausted his administrative remedies. Defendant explains that he submitted a request for compassionate release on June 4, more than 30 days have passed since he submitted that request, and he has since received a denial of that request.

*Legal Standard*

Criminal defendants are empowered to request compassionate release for "extraordinary and compelling reasons." United States v. Alam, 960 F.3d 831, 832 (6th Cir. 2020); United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020). Specifically, in relevant part, 18 U.S.C. § 3582 provides:

> The court may not modify a term of imprisonment once it has been imposed except that—
>    (1) in any case—
>       (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 USCS § 3553(a)] to the extent that they are applicable, if it finds that—
>          (i) extraordinary and compelling reasons warrant such a reduction;

18 U.S.C. § 3582(c)(1)(A)(i). Before a defendant makes a request for compassionate release due to "extraordinary and compelling circumstances," defendants must at least ask the [BOP] to do so on their behalf and give BOP thirty days to respond." Raia, 954 F.3d at 595; see also Alam, 960 F.3d at 833-34.

*Discussion*

After review, the Court must deny Defendant's motion.

The Third and Sixth Circuits have found that the administrative exhaustion requirement of § 3582(c)(1)(A) is mandatory even in the context of Covid 19.  <u>Alam</u>, 960 F.3d at 835-36; <u>Raia</u>, 954 F.3d at 597 (noting, in the context of an individual who did not wait 30 days from making a request for compassionate release before moving for release in the federal court system, "Although the District Court's indicative ruling did not mention the exhaustion requirement, it presents a glaring roadblock foreclosing compassionate release at this point.").  The Ninth Circuit has held that "while judicially created exhaustion requirements may be waived by the courts for discretionary reasons, statutorily-provided exhaustion requirements deprive the court of jurisdiction and thus, preclude any exercise of discretion by the court." <u>Gallo Cattle Co. v. U.S. Dept. of Agric.</u>, 159 F.3d 1194, 1197 (9th Cir. 1998); <u>see</u> <u>Shaw v. Bank of Am. Corp.</u>, 946 F.3d 533, 541 (9th Cir. 2019).  Consistent with *Gallo Cattle* and *Shaw*, numerous district courts, including opinions from the Eastern District of California, have held that § 3582(c)(1)(A)'s exhaustion requirement may not be waived.  E.g. <u>United States v. Howard</u>, 2020 U.S. Dist. LEXIS 113628, *5 (E.D. Cal. June 29, 2020) (Ishii, J.); <u>United States v. Logan</u>, 2020 U.S. Dist. LEXIS 88672, *3-*4 (W.D. N.C. May 20, 2020) (and numerous cases cited therein); <u>United States v. Cruceru</u>, 2020 U.S. Dist. LEXIS 84502, *3 (E.D. Cal. May 12, 2020) (Nunley, J.); <u>United States v. Valladares</u>, 2020 U.S. Dist. LEXIS 75182, *4 (S.D. Cal. Apr. 29, 2020) (and cases cited therein); <u>United States v. Meron</u>, 2020 U.S. Dist. LEXIS 66533, *5 (E.D. Cal. Apr. 15, 2020) (Mueller, C.J.).

Here, Defendant has received a denial from the Warden of FCI Lompoc, and the denial was made within 30 days of the Warden's receipt of Defendant's motion.  Defendant' s motion contends that he has exhausted his administrative remedies as required by § 3582(c)(1)(A), either because the Warden has denied the motion, more than 30 days have passed since the date that the Warden received the motion, or both.

To be sure, some courts would agree with Defendant and hold that he has exhausted his administrative remedies.  E.g. <u>United States v. Field</u>, 2020 U.S. Dis. LEXIS 78112, *2-*3 (S.D.

4

N.Y. May 4, 2020); United States v. Kesoyan, 2020 WL 2039028, *3 (E.D. Cal. Apr. 28, 2020) (Mendez, J.). However, other Courts find that the "lapse of 30 days" language of § 3582(c)(1)(A) creates in essence a limited futility exception. E.g. United States v. Greenlove, 2020 U.S. Dist. LEXIS 114624, *10-*21 (M.D. Penn. June 30, 2020); United States v. Opoku, 2020 U.S. Dist. LEXIS 107781, *5-*6 (S.D. Miss. June 19, 2020); United States v. Seng, 2020 U.S. Dist. LEXIS 82044, *17-*22 (S.D. N.Y. May 8, 2020). Under this view, if there is no response within 30 days of submission of a request for compassionate release, a defendant at that point may then proceed to Court without further administrative action; if there is a timely response, the 30 day lapse language has no application and the defendant must follow the otherwise applicable administrative procedures and appeal the denial. See id. The rationale for this view has been explained by one district court as follows:

> Although definitions of "lapse" include "a passage of time," other definitions include "a slight error typically due to forgetfulness or inattention," and "the termination of a right or privilege through neglect to exercise it within some limit of time." Lapse, Merriam-Webster.com Dictionary, Merriam-Webster (accessed May 4, 2020), available at https://www.merriam-webster.com/dictionary/lapse. Applying the first definition would substantially undermine one of the goals of an exhaustion requirement—protecting agency authority, expertise, and the opportunity to correct mistakes—"as it [would] allow[] a defendant to come to court before the agency has rendered a final decision" and foreclose higher-level BOP review of a request. The first reading would also—in many cases—render the statute's provision regarding full exhaustion of administrative remedies meaningless, as defendants like Ng would forego appealing a warden's denial of their compassionate release request if the 30-day period was nearing an end. Indeed, given the BOP's regulations regarding its deadlines for considering compassionate release requests, it is unlikely in the normal case that a defendant could exhaust his administrative remedies within 30 days. If Congress desired to so fundamentally change the compassionate release process by circumventing the BOP's full administrative review, Congress could have used clearer language, as it did elsewhere in the First Step Act. For example, in the very next subsection of the statute, Congress implemented a fourteen day deadline for the BOP to process a terminally ill defendant's request for compassionate release. See 18 U.S.C. § 3582(d)(2)(A)(iv) ("The Bureau of Prisons shall . . . in the case of a defendant diagnosed with a terminal illness . . . not later than 14 days of receipt of a request for a sentence reduction . . . , process the request.") Although I recognize that the First Step Act introduced several progressive reforms to the federal prison system, including "improving application of compassionate release," 164 Cong. Rec. H10346-04, H10362 (daily ed. Dec. 20, 2018), and "expedit[ing] compassionate release applications," 164 Cong. Rec. S7774 (daily ed. Dec. 18, 2018), I cannot conclude that the Act went so far as to render meaningless the BOP's consideration of such applications in the first instance without specific language evidencing such a Congressional intent.

Seng, 2020 U.S. Dist. LEXIS 82044 at *17-*19.

5

After consideration, this Court agrees with the latter reading of § 3582(c)(1)(A)'s "lapse of 30 days" language. If a defendant's request is not acted upon within 30 days, the defendant may file a motion for compassionate release in federal court, but if the request is denied within 30 days, the defendant must continue to appeal and exhaust available administrative remedies. See Greenlove, 2020 U.S. Dist. LEXIS 114624 at *10-*21; Opoku, 2020 U.S. Dist. LEXIS 107781 at *5-*6; United States v. Davis, 2020 U.S. Dist. LEXIS 87019, *4-*5 (E.D. N.Y. May 18, 2020); Seng, 2020 U.S. Dist. LEXIS 82044 at *17-*22; United States v. Weidenhamer, 2019 U.S. Dist. LEXIS 195620, *10-*11 (D. Ariz. Nov. 8, 2019). The Court finds that this is a reasonable reading of § 3582(c)(1)(A) and does not result in rendering that section's "exhaustion" language a nullity. If the Court were to accept the view that merely waiting 30 days until after a request for compassionate release has been submitted, irrespective of timely action by the BOP/Warden, "an inmate would never have a reason to exhaust his administrative remedies, since he could simply make a motion in the district court after waiting for 30 days following his submission of his request to the warden." Davis, 2020 U.S. Dist. LEXIS 87019 at *4-*5.

As noted above, Defendant has merely waited 30 days since he submitted his request for compassionate release to the Warden of FCI Lompoc, even though he received a timely denial by the Warden. Therefore, Defendant has failed to exhaust his administrative remedies, which is a jurisdictional failure. See Gallo Cattle, 159 F.3d at 1197; Greenlove, 2020 U.S. Dist. LEXIS 114624 at *15-*16; Howard, 2020 U.S. Dist. LEXIS 113628 at *5; Meron, 2020 U.S. Dist. LEXIS 66533 at *5. Because of this jurisdictional failure, the Court must deny Defendant's motion.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that Defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. No. 31) is DENIED without prejudice.

IT IS SO ORDERED.

Dated:   July 20, 2020                                     _____
                                                    SENIOR DISTRICT JUDGE