**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff**<br><br>v.<br><br>CHARLES ALBERT RISLEY,<br><br>**Defendant** | CASE NO. 1:12-CR-0363 AWI<br><br>**ORDER ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE FOLLOWING ADDITIONAL BRIEFING/RECONSIDERATION**<br><br>(Doc. No. 36) |

On July 17, 2020, Defendant Charles Risley filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). See Doc. No. 31. Defendant is currently housed at the FCI Lompoc federal prison. Based on his age, medical conditions, the conditions of confinement at FCI Lompoc, and the Covid 19 pandemic, Defendant sought compassionate release and either a new sentence of time served or home detention for the remainder of his sentence. See id.

On July 20, 2020, the Court denied Defendant's motion without ordering a response from the United States or ordering additional briefing from Defendant. See Doc. No. 33.

On August 4, 2020, the Court granted a motion for reconsideration, vacated its July 20 order, and ordered the United States to respond to Defendant's motion. See Doc. No. 35. As part of that order, the Court expressly ordered the United States to address the exhaustion issue and the Court's prior analysis of the exhaustion issue. See id. at 3:12-16.

After an extension of time, all briefing has now been received. For the reasons that follow, the Court will continue to deny Defendant's motion.

# PROCEDURAL HISTORY

On April 1, 2013, Defendant pled guilty pursuant to a plea agreement to violation of 18 U.S.C. § 2252 (receipt or distribution of a visual depiction of a minor engaged in sexually explicit conduct).  See Doc. Nos. 18, 19.  On June 10, 2013, Defendant was sentenced to a term of 180 months imprisonment and lifetime supervised release.  See doc. Nos. 25, 26.  Defendant's projected release date is July 24, 2025.

On May 13, 2020, Defendant tested positive for Covid 19.  Defendant did not report any severe symptoms and was released back into the inmate population on June 1, 2020.

On June 3, 2020, Defendant sent a request to the Warden of FCI Lompoc and requested compassionate release, in accordance with § 3582(c)(1)(A).  The letter was received on June 4.

On June 29, 2020, the Warden of FCI Lompoc denied compassionate release.

On July 17, 2020, Defendant filed this § 3582(c)(1)(A) motion for compassionate release.

# DEFENDANT'S MOTION

*Defendant's Argument*

Defendant argues that he is a 61 year old male who has a history of hypertension, Type 2 diabetes, asthma, hyperlipidemia, and obesity.  These conditions make Defendant more susceptible to severe Covid 19 illness.  Further, Defendant was already diagnosed with Covid 19 in May 2020.  The immune response to Covid 19 is unknown, and there is a growing body of evidence that individuals who contracted and recovered from Covid 19 may be re-infected and suffer further rounds of illness.  Despite not knowing where Defendant is with respect to his Covid 19 illness,[1] Defendant was placed in a dorm setting with 78 other inmates on June 1, 2020.  If Defendant's condition worsens, it is unlikely that he will receive adequate medical care at FCI Lompoc.  Further, records show that 857 inmates and 16 staff at Lompoc contracted Covid 19, with 2 inmates dying and all other inmates supposedly recovering.  Currently, two staff are testing

---

[1] The BOP has deemed Defendant's Covid 19 to be "resolved" as of May 28, 2020, and Defendant admits that he did not/has not reported any serious symptoms.  No evidence has been presented that indicates that Defendant is actually dealing with an active or "non-resolved" case of Covid 19.

2

positive for Covid 19. Lompoc is one of the worst Covid 19 hotspots in the Country. The current conditions at Lompoc do not permit Defendant to socially distance or isolate since he housed in a dorm with bunk beds that are 3.5 feet apart. Seventy-eight inmates share six sinks, five toilets, and five showers. Up to 180 inmates are only provided with 90 minutes outside the dorm, and up to 100 individuals can use computers and phones before those items are cleaned. Therefore, the combination of Defendant's medical conditions and age, the "living conditions" at Lompoc, the history of Covid 19 at Lompoc, and the presence of 2 active cases of Covid 19 by staff at FCI Lompoc demonstrate "extraordinary circumstances" that justify compassionate release.

Defendant also argues that he has exhausted his administrative remedies. Defendant explains that he submitted a request for compassionate release on June 4, more than 30 days have passed since he submitted that request, and he has since received a denial of that request.

Finally, Defendant argues that he has engaged in rehabilitative efforts, his crime did not involve physical contact with a child, he does not seek to be released to his home (where the offense occurred), and he will have lifetime supervised release to obtain further rehabilitation services. Defendant argues that he will be released to his mother's home, and that his mother will provide support, transportation, and other necessities.

*Government's Opposition*

The United States asserts that because more than 30 days have elapsed since receipt by the warden of FCI Lompoc, Defendant has satisfied the § 3582(c)(1)(A) exhaustion requirement. The United States argues that compassionate release should be denied for several reasons. First, while Defendant's diabetes and obesity put him in an at risk category of individuals for sever Covid 19 illness, he has already had Covid 19 and recovered. Although the science is still developing, there have been no confirmed reinfections of Covid 19. Courts generally find that the risk of reinfection does not warrant compassionate release. Further, the conditions at Lompoc have improved and the protocols of the BOP are sufficient to care for Defendant. Second, Defendant remains a danger to the community. The crime of receipt of child pornography represents a threat to children, and Defendant's crime carried a mandatory 15 year sentence, of which Defendant has complete a little more than 50% (93 months of a 180 month sentence). Defendant has a criminal history of

convictions for lewd and lascivious acts with a child under 14, possession of a controlled substance, failure to register as a sex offender, possession of obscene material involving a child under 14, and being a felon in possession of a firearm. He violated state parole after a 1993 conviction. Further, the child pornography that was found in Defendant's possession was particularly disturbing. Finally, the relevant 18 U.S.C. § 3553 factors do not support release and granting Defendant compassionate release would result in an inappropriate windfall.

*Legal Standard*

Criminal defendants are empowered to request compassionate release for "extraordinary and compelling reasons." United States v. Alam, 960 F.3d 831, 832 (6th Cir. 2020); United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020). Specifically, in relevant part, 18 U.S.C. § 3582 provides:

> The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 USCS § 3553(a)] to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction;

18 U.S.C. § 3582(c)(1)(A)(i). Before a defendant makes a request for compassionate release due to "extraordinary and compelling circumstances," defendants must at least ask the [BOP] to do so on their behalf and give BOP thirty days to respond." Raia, 954 F.3d at 595; see also Alam, 960 F.3d at 833-34. Further, in addition to demonstrating "extraordinary and compelling circumstances," a prisoner must also show that he is no longer a danger to a specific person or the community. See United States v. Jones, 2020 U.S. Dist. LEXIS 144010, *8-*9 (N.D. Cal. Aug. 10, 2020); United States v. Dailey, 2020 U.S. Dist. LEXIS 139977, *3-*4 (E.D. Cal. Aug. 5, 2020); United States v. Pickard, 2020 U.S. Dist. LEXIS 130578, *15 (E.D. Cal. July 22, 2020).

*Discussion*

After further review, the Court will continue to deny Defendant's motion.

1. Exhaustion

The Third and Sixth Circuits have found that the administrative exhaustion requirement of § 3582(c)(1)(A) is mandatory even in the context of Covid 19. Alam, 960 F.3d at 835-36; Raia, 954 F.3d at 597 (noting, in the context of an individual who did not wait 30 days from making a request for compassionate release before moving for release in the federal court system, "Although the District Court's indicative ruling did not mention the exhaustion requirement, it presents a glaring roadblock foreclosing compassionate release at this point."). The Ninth Circuit has held that "while judicially created exhaustion requirements may be waived by the courts for discretionary reasons, statutorily-provided exhaustion requirements deprive the court of jurisdiction and thus, preclude any exercise of discretion by the court." Gallo Cattle Co. v. U.S. Dept. of Agric., 159 F.3d 1194, 1197 (9th Cir. 1998); see Shaw v. Bank of Am. Corp., 946 F.3d 533, 541 (9th Cir. 2019). Consistent with *Gallo Cattle* and *Shaw*, numerous district courts, including opinions from the Eastern District of California, have held that § 3582(c)(1)(A)'s exhaustion requirement may not be waived. E.g. United States v. Howard, 2020 U.S. Dist. LEXIS 113628, *5 (E.D. Cal. June 29, 2020) (Ishii, J.); United States v. Logan, 2020 U.S. Dist. LEXIS 88672, *3-*4 (W.D. N.C. May 20, 2020) (and numerous cases cited therein); United States v. Cruceru, 2020 U.S. Dist. LEXIS 84502, *3 (E.D. Cal. May 12, 2020) (Nunley, J.); United States v. Valladares, 2020 U.S. Dist. LEXIS 75182, *4 (S.D. Cal. Apr. 29, 2020) (and cases cited therein); United States v. Meron, 2020 U.S. Dist. LEXIS 66533, *5 (E.D. Cal. Apr. 15, 2020) (Mueller, C.J.). The failure to exhaust administrative remedies as mandated by § 3582(c)(1)(A) is a jurisdictional failure. See Gallo Cattle, 159 F.3d at 1197; United States v. Greenlove, 2020 U.S. Dist. LEXIS 114624, *15-*16 (M.D. Penn. June 30, 2020); Howard, 2020 U.S. Dist. LEXIS 113628 at *5; United States v. Smith, 2020 U.S. Dist. LEXIS 113423, *16 (E.D. Ark. May 14, 2020); Meron, 2020 U.S. Dist. LEXIS 66533 at *5.

Here, Defendant has received a denial from the Warden of FCI Lompoc, and the denial was made within 30 days of the Warden's receipt of Defendant's request for compassionate

release.  Defendant's motion contends that he has exhausted his administrative remedies as required by § 3582(c)(1)(A), either because the Warden has denied the motion, more than 30 days have passed since the date that the Warden received the motion, or both.  Without extensive elaboration, the United States agrees that Defendant has exhausted his administrative remedies because 30 days have lapsed since Defendant submitted his request for compassionate release.

There is a significant split among the district courts of this country regarding the proper interpretation of the "lapse of 30 days" language of § 3582(c)(1)(A).  Some courts agree with the parties and hold that there is sufficient exhaustion as long as 30 days lapse from the date the warden receives a request for compassionate release, period.  E.g. United States v. Ezukanma, 2020 U.S. Dist. LEXIS 141363, *10-*15 (N.D. Tex. Aug. 6, 2020); United States v. Field, 2020 U.S. Dis. LEXIS 78112, *2-*3 (S.D. N.Y. May 4, 2020); United States v. Kesoyan, 2020 WL 2039028, *3 (E.D. Cal. Apr. 28, 2020) (Mendez, J.).  However, other Courts find that the "lapse of 30 days" language creates in essence a limited futility exception.  E.g. United States v. Grasha, 2020 U.S. Dist. LEXIS 142401, *13-*16 (W.D. Pa. Aug. 10, 2020); United States v. Van Sickle, 2020 U.S. Dist. LEXIS 122809, *6-*7 (W.D. Wash. July 13, 2020); United States v. Greenlove, 2020 U.S. Dist. LEXIS 114624, *10-*21 (M.D. Penn. June 30, 2020); United States v. Opoku, 2020 U.S. Dist. LEXIS 107781, *5-*6 (S.D. Miss. June 19, 2020); Smith, 2020 U.S. Dist. LEXIS 113423 at *16-*17; United States v. Miller, 2020 U.S. Dist. LEXIS 113349, *2 (Jan. 8, 2020); United States v. Weidenhamer, 2019 U.S. Dist. LEXIS 195620, *10-*11 (D. Ariz. Nov. 8, 2019).  Under this view, if there is no response within 30 days of submission of a request for compassionate release, a defendant at that point may proceed to Court without further administrative action, but, if there is a timely response, the 30 day lapse language has no application and the defendant must follow the otherwise applicable administrative procedures and appeal the denial.  See id.  The rationale for this view has been explained by one district court as follows:

> Although definitions of "lapse" include "a passage of time," other definitions include "a slight error typically due to forgetfulness or inattention," and "the termination of a right or privilege through neglect to exercise it within some limit of time."  Lapse, Merriam-Webster.com Dictionary, Merriam-Webster (accessed May 4, 2020), available at https://www.merriam-webster.com/dictionary/lapse.

> Applying the first definition would substantially undermine one of the goals of an exhaustion requirement—protecting agency authority, expertise, and the opportunity to correct mistakes—"as it [would] allow[] a defendant to come to court before the agency has rendered a final decision" and foreclose higher-level BOP review of a request. The first reading would also—in many cases—render the statute's provision regarding full exhaustion of administrative remedies meaningless, as defendants like Ng would forego appealing a warden's denial of their compassionate release request if the 30-day period was nearing an end. Indeed, given the BOP's regulations regarding its deadlines for considering compassionate release requests, it is unlikely in the normal case that a defendant could exhaust his administrative remedies within 30 days. If Congress desired to so fundamentally change the compassionate release process by circumventing the BOP's full administrative review, Congress could have used clearer language, as it did elsewhere in the First Step Act. For example, in the very next subsection of the statute, Congress implemented a fourteen day deadline for the BOP to process a terminally ill defendant's request for compassionate release. See 18 U.S.C. § 3582(d)(2)(A)(iv) ("The Bureau of Prisons shall . . . in the case of a defendant diagnosed with a terminal illness . . . not later than 14 days of receipt of a request for a sentence reduction . . . , process the request.") Although I recognize that the First Step Act introduced several progressive reforms to the federal prison system, including "improving application of compassionate release," 164 Cong. Rec. H10346-04, H10362 (daily ed. Dec. 20, 2018), and "expedit[ing] compassionate release applications," 164 Cong. Rec. S7774 (daily ed. Dec. 18, 2018), I cannot conclude that the Act went so far as to render meaningless the BOP's consideration of such applications in the first instance without specific language evidencing such a Congressional intent.

United States v. Seng, 2020 U.S. Dist. LEXIS 82044, *17-*19 (S.D. N.Y. May 8, 2020).

In the Court's original order, the Court adopted the latter view of the "lapse of 30 days language." The Court found the analysis of *Seng* to be particularly persuasive. However, as indicated above, the Court granted reconsideration in light of the positions taken by the BOP and the representations of the United States in other cases within the Fresno Division of the Eastern District of California. Although the Court was willing to consider additional arguments, the Court remained skeptical, which was why the Court expressly ordered the United States to address the Court's prior analysis and the analysis of *Seng*. Particularly noteworthy with respect to *Seng* was that Court' rejection of giving the BOP's interpretation of § 3582(c)(1)(A) any deference. See id. at *16 n.11. The United States unfortunately failed to follow the Court's order. In essence, the United States merely stated that 30 days lapsed and that was good enough. The problem is that "subject matter jurisdiction must exist as of the time the action is commenced, especially in the context of administrative exhaustion." Shaw, 946 F.3d at 541. Subject matter jurisdiction cannot be created through agreement by the parties. See Holman v. Laulo-Rowe Agency, 994 F.2d 666, 668 n.1 (9th Cir. 1992). Federal courts "have an independent obligation to determine whether

7

subjection matter-jurisdiction exists, even in the absence of a challenge from any party." Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006). Simply because the parties agree that a lapse of 30 days from the date a warden receives a request for compassionate release constitutes sufficient exhaustion does not make it so. Holman, 994 F.2d at 668 n.1; Smith, 2020 U.S. Dist. LEXIS at 113423 at *6.

After consideration, this Court continues to agree with the rationale of *Seng* and with the many district courts that follow *Seng*'s interpretation of § 3582(c)(1)(A)'s "lapse of 30 days" language. If a defendant's request is not acted upon within 30 days, the defendant may file a motion for compassionate release in federal court, but if the request is denied within 30 days, the defendant must continue to appeal and exhaust available administrative remedies. See Grasha, 2020 U.S. Dist. LEXIS 142401 at *13-*16; United States v. Haas, 2020 U.S. Dist. LEXIS 143863, *9-*12 (E.D. Ky. Aug. 7, 2020); Van Sickle, 2020 U.S. Dist. LEXIS 122809 at *6-*7; Greenlove, 2020 U.S. Dist. LEXIS 114624 at *10-*21; Opoku, 2020 U.S. Dist. LEXIS 107781 at *5-*6; United States v. Davis, 2020 U.S. Dist. LEXIS 87019, *4-*5 (E.D. N.Y. May 18, 2020); Seng, 2020 U.S. Dist. LEXIS 82044 at *17-*22; United States v. Weidenhamer, 2019 U.S. Dist. LEXIS 195620, *10-*11 (D. Ariz. Nov. 8, 2019).

The Court finds that this is a reasonable reading of § 3582(c)(1)(A) and does not result in rendering that section's "exhaustion" language a nullity. If the Court were to accept the view that merely waiting 30 days until after a request for compassionate release has been submitted, irrespective of timely action by the BOP/Warden, "an inmate would never have a reason to exhaust his administrative remedies, since he could simply make a motion in the district court after waiting for 30 days following his submission of his request to the warden." Davis, 2020 U.S. Dist. LEXIS 87019 at *4-*5. This is so because the Court is unaware of an instance in which a prisoner who seeks compassionate release has fully exhausted the administrative process in 30 days or less. Cf. Seng, 2020 U.S. Dist. LEXIS 142401 at *18-*19 ("[I]t is unlikely in the normal case that a defendant could exhaust his administrative remedies in 30 days."). Further, this interpretation is consistent with the recognized congressional intent to speed up the compassionate release process. See id. If the warden does not act in 30 days, the administrative process is

sufficiently fulfilled, and the prisoner may then go to court.  If the warden denies the request, the remainder of the administrative process must be exhausted, but at least the process may continue within 30 days of the warden receiving the request.  Under either scenario, the administrative process is advanced within 30 days.  Finally, courts before and after this Court's initial order denying Defendant relief continue to follow *Seng*'s interpretation (even if *Seng* is not cited) despite the BOP's interpretation and despite positions taken by the United States in various Covid related cases.  E.g. Grasha, 2020 U.S. Dist. LEXIS 142401 at *13-*16; United States v. Baker, U.S. Dist. LEXIS 142340, *9 n.33 (E.D. La. Aug. 10, 2020); Haas, 2020 U.S. Dist. LEXIS 143863 at *9-*12; United States v. Godinez, 2020 U.S. Dist. LEXIS 140586, *6 (S.D. Cal. Aug. 5, 2020); United States v. Meader, 2020 U.S. Dist. LEXIS 136383, *2 (D. Me. July 31, 2020); Van Sickle, 2020 U.S. Dist. LEXIS 122809 at *6-*7; Smith, 2020 U.S. Dist. LEXIS 113423 at *16; Opoku, 2020 U.S. Dist. LEXIS 107781 at *5-*6; Seng, 2020 U.S. Dist. LEXIS 82044 at *16-*19.

      Here, Defendant has merely waited 30 days since he submitted his request for compassionate release to the Warden of FCI Lompoc, even though he received a timely denial by the Warden.  Therefore, Defendant has failed to exhaust his administrative remedies, which is a jurisdictional failure.  See Gallo Cattle, 159 F.3d at 1197; Greenlove, 2020 U.S. Dist. LEXIS 114624 at *15-*16; Howard, 2020 U.S. Dist. LEXIS 113628 at *5; Smith, 2020 U.S. Dist. LEXIS 113423 at *16; Meron, 2020 U.S. Dist. LEXIS 66533 at *5.  Because of this jurisdictional failure, the Court must deny Defendant's motion.

      2.     Compelling and Extraordinary Circumstances

      Alternatively, even if there was sufficient exhaustion, the Defendant has not demonstrated that extraordinary and compelling circumstances exist.  The Court agrees that because Defendant is obese and has Type II Diabetes, he is at risk for serious infection from Covid 19.  See www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal =https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html.  While Defendant's age of 61 puts him at an increased risk compared to those in their 40's or 50's, the CDC website suggests that those 65 years and older face the greatest risk (particularly those over 85) because they

9

account for 80% of reported Covid 19 deaths.  See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.  However, Defendant already had Covid 19 in mid-May 2020, recovered on May 28, 2020, and neither had or has any serious symptoms or complications from the infection.  According to the CDC, "[r]einfection with SARS-CoV-2 has not yet been definitively confirmed in any recovered persons to date. If, and if so when, persons can be reinfected with SARS-CoV-2 remains unknown and is a subject of investigation." https:www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html#:~:text= Reinfection%20with%20SARS%2DCoV, a%20subject%20of%20investigation. (updated July 24, 2020).  Further, at least one recent newspaper article has reported that the general consensus is that people who have had Covid 19 also  have some degree of immunity to it.  See www.wsj.com/articles/can-you-get-covid-19-twice-11589388593.

Courts generally find that the risk of a second infection does not constitute sufficiently compelling grounds to justify compassionate release.  E.g. United States v. Billings, 2020 U.S. Dist. LEXIS 145819, *10 (D. Col. Aug. 13, 2020) (and cases cited therein); United States v. Antillon, 2020 U.S. Dist. LEXIS 146253, *5 (D. Utah Aug. 13, 2020); United States v. Poole, 2020 U.S. Dist. LEXIS 144803, *8-*9 (D. S.D. Aug. 12, 2020); Baker, 2020 U.S. Dist. LEXIS 142340 at *12-*13 (and cases cited therein); United States v. Bowen, 2020 U.S. Dist. LEXIS 144071, *14 (E.D. Cal. Aug. 10, 2020); United States v. Gonzalez, 2020 U.S. Dist. LEXIS 141676, *7-*8 (C.D. Cal. Aug. 6, 2020) (and cases cited therein).  Further, FCI Lompoc has two staff members and no inmates who are currently testing positive for Covid 19.  See https://www.bop.gov/coronavirus/.  To be sure, at one point the Lompoc federal prison was the hotspot for Covid 19 infections in the country.  However, that is not the current condition at Lompoc, and that prison is no longer dealing with a widespread Covid 19 breakout.  Cf. Antillon, 2020 U.S. Dist. LEXIS 146253 at *5 ("[T]here are currently *only* two cases of Covid 19 at FCI Lompoc, where Defendant is housed.") (emphasis added).  Courts within this district have found that, despite the past failure to contain Covid 19 among its inmate population, the Lompoc prison has implemented sufficient protocols such that it is now able to adequately respond, monitor, and care for its inmates.  See Poole, 2020 U.S. Dist. LEXIS 144803 at *8; Bowen, 2020 U.S. Dist.

LEXIS at 144071 at *14-*15 (citing United States v. Eddings, 2020 WL 2615029, *2 (E.D. Cal. May 22, 2020) and United States v. Purry, 2020 U.S. Dist. LEXIS 92857 (D. Nev. May 28, 2020)).

Given that Defendant has recovered from Covid 19 without severe symptoms, and considering the small number of Covid 19 positive cases at FCI Lompoc, as well as the recognized improvements that Lompoc has made with respect to Covid 19, the Court concludes that the possibility of reinfection from Covid 19 is too speculative to warrant compassionate release.

3.   Danger to the Community

Alternatively, even if the Court concluded that Defendant had adequately exhausted his administrative remedies, and even if the Court found that extraordinary and compelling circumstances existed that may justify compassionate release, the Court cannot find that Defendant does not present a danger to the community. Defendant has served a little more than half of his sentence. He was convicted of receipt of child pornography. While this offense does not involve any actual contact with a child, it nevertheless poses a real danger to children in that "child pornography begets more child pornography" and feeds dangerous desires and addictions. United States v. Blum, 534 F.3d 608, 611 (7th Cir. 2008); see also United States v. MacEwan, 445 F.3d 237, 250 (3d Cir. 2006). As described in the United States' opposition, the child pornography that was found on Defendant's computer contained images of children ranging from 3 to 9 years of age. The child pornography that was in Defendant's possession can fairly be described as truly vile and inhumane. Further, Defendant had a significant criminal history that involved sexual acts towards those younger than 14, failure to register as a sex offender, numerous parole violations, and illegally possessing firearm because of his status as a felon. Failing to register, violating parole, and illegally obtaining a firearm reflect a disregard for post-conviction rules and community protections. Defendant has completed some self-improvement/adult education courses in prison, but the only course that might be relevant to his crime of conviction was a victim impact course. Finally, while Defendant will live his mother, who will provide food, shelter, transportation, and support, Defendant's mother is (of necessity) older than Defendant and

her ability to do those things for Defendant (or for how long) is far from clear.[2]  Therefore, given the nature of Defendant's crime, the Defendant's apparently limited rehabilitative efforts to date, the nature of Defendant's criminal history, and the uncertainties surrounding his living conditions if released, the Court concludes that releasing Defendant at this time would pose a danger to the community.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's motion for compassionate release (Doc. No. 36) is DENIED; and
2. The Court will not entertain further motions for reconsideration.[3]

IT IS SO ORDERED.

Dated:   August 17, 2020                              _____
                                                      SENIOR DISTRICT JUDGE

---

[2] The Court in no way disparages Defendant's mother or her abilities, nor does the Court hold that a prisoner cannot be released to reside with an elderly parent. The Court merely notes that Defendant classifies himself as someone of advanced age, his release plans depend almost entirely on his mother, and the Court has no information regarding the abilities and resources of Defendant's mother.

[3] As noted above, the exhaustion issue has divided district courts across the country, including courts within the Ninth Circuit itself. The Court has chosen the interpretation that it finds to be the more persuasive. However, there is no binding authority, and district courts join each side of the issue on a regular basis. Guidance from the appellate courts, particularly the Ninth Circuit, is needed. Therefore, to the extent that the parties disagree with the analysis of this order, the parties may choose to appeal to the Ninth Circuit so that needed clarity and uniformity may be obtained regarding § 3582(c)(1)(A) exhaustion, one way or the other.